346 A.2d 768

**COMMONWEALTH of Pennsylvania**

v.

**James CROSBY, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 8, 1975.

Decided Oct. 30, 1975.

338

Edward A. Savastio, Upper Darby, for appellant.

Ralph B. D'Iorio, Asst. Dist. Atty., Chief, Appeals Div., Stephen J. McEwen, Jr., Dist. Atty., Media, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Following a jury trial, appellant was convicted of assault to commit sodomy, sodomy, and murder in the second degree. The only direct evidence against appellant was his confession which had been the subject of an earlier suppression hearing. Appellant contends here that he was denied due process of law because the confession should have been suppressed as involuntarily and improperly obtained. After reviewing the aggregate of the circumstances surrounding the taking of the confession, we believe that the suppression court correctly found that the appellant's confession was voluntary. We therefore affirm.

The half-naked body of Eugene Moore, aged 14, was discovered on an athletic field in Darby Township, Delaware County, on the morning of December 26, 1970. An autopsy revealed that he had been subjected to anal intercourse and the cause of death was strangulation.

During the ensuing investigation of the crime, appellant, among others, was interviewed by the police on December 30, 1970. Appellant voluntarily came into the police station because he understood the Chief of Police wanted to talk to him. It had come to their attention, and appellant freely admitted, that he had often engaged in acts of anal intercourse with young boys, during the course of which he would grab his victim by the throat.

However, he steadfastly denied any knowledge of or participation in the crime in question and, after about two hours of discussion, appellant exercised his right to terminate the interview and left the police station.

On January 16, 1971, Detective Dickerson along with another detective went to the appellant's home armed with a search warrant for the appellant's residence which warrant ultimately turned out to be patently defective due to a lack of the required affidavit. The detectives did not attempt to execute a search because they did not wish to disturb appellant's mother who was the only person home at the time. Instead, the two detectives traveled to Philadelphia and appeared at the appellant's father's automobile repair shop where the appellant was working. Upon arrival, Dickerson told appellant in the presence of his father that they wanted to speak further with him about the Eugene Moore murder case. At this time, he also advised appellant of his constitutional right to remain silent, to have free counsel, etc., and appellant acknowledged his understanding of these rights. Appellant was not charged with any crime or taken into custody at this time. Dickerson also told him that they had a search warrant for his house. The appellant expressed willingness to speak with the officers, although he indicated a desire that the questioning take place in the repair shop. Dickerson stated his preference that the interview be conducted at the Court House in Media, in view of the cold and uncomfortable conditions in the repair shop, and, after a short exchange, appellant agreed to go to Media.

The appellant, in the company of the detectives, arrived at the Court House at about 1:25 P.M. Nothing transpired until 1:40 P.M. when Dickerson again advised the appellant of his constitutional rights and he expressed his understanding of these and his willingness to answer questions. Appellant then answered questions

for about twenty minutes, but steadfastly denied any involvement in the case.

In that 20 minutes Dickerson suggested that appellant take a lie detector test, to which suggestion appellant agreed. For the next hour and a half, appellant had lunch without any questions being asked. When the polygraph operator arrived about 3:20 P.M., he again warned appellant of his rights, familiarized him with the polygraph equipment and reviewed the exact, proposed questions with him.

The next six hours were spent irregularly on the tests, the first beginning at 5:20 P.M. During this time appellant took a two-hour break for dinner, from 6:30 to 8:30 P.M. The last test was concluded at 9:00 P.M. Throughout the entire period, appellant appeared alert, cooperative and relaxed.

At 10:00 P.M., appellant had a coffee break and it was pointed out to him that he had answered certain questions deceptively. At 10:15 P.M. the constitutional warnings were again repeated. Appellant continued to deny any participation in the crime.

At about 10:30 P.M., the two detectives decided to conclude the interview and take defendant home. As they and appellant began to put on their coats, appellant suddenly and without any question having been put to him blurted out that he had assaulted Eugene Moore and killed him. Dickerson then placed him under arrest, advised him again of his constitutional rights and appellant agreed to give a recorded statement and reenact the crime.

The court reporter arrived about midnight. Appellant was again advised of his constitutional rights, prior to the taking of the statement. The questioning in the presence of the court reporter was concluded at 12:25 A. M. Appellant also reenacted the crime at the scene later that morning.

At the time of the crime and the confession, appellant was 18 years of age. Both Detective Dickerson and the detective who administered the polygraph examination testified at the suppression hearing that they were aware that they were dealing with a person of less than average intelligence. In fact, appellant had only gone as far as the eighth grade in school, and psychiatric reports stated that his I.Q. was in the range of 70–75 which classified him as a borderline mental defective.

Appellant's attack upon the admission of his confession into evidence is fashioned as a two-pronged attack: (1) the facts disclosed at the suppression hearing manifest such an intentional course of trickery and duplicity on the part of the police that the confession can only be viewed as the result of a well-orchestrated scheme to overcome the appellant's will and capacity to assert his constitutional rights; (2) in view of the totality of the circumstances, the will of the appellant was so overborne that the confession was not a result of a free and unconstrained choice. It is apparent that both claims assert the involuntariness of the confession. Consequently, our review encompasses the totality of the circumstances surrounding the giving of the statement being challenged. *Clewis v. Texas*, 386 U.S. 707, 708, 87 S.Ct. 1338, 18 L. Ed.2d 423 (1967); *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704, 706 (1975).

■■ Where the suppression court determines that the confession is voluntary, appellate review of the testimony is limited. This Court will consider only "the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Culombe v. Connecticut*, 367 U.S. 568, 604, 81 S.Ct. 1860, 1880, 6 L.Ed.2d 1037 (1961). *Accord, Commonwealth v. Tucker, supra; Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). We are also

mindful of the principle that the suppression court's findings of fact will not be disturbed on appeal where the findings have support in the record. *Commonwealth v. Stafford,* 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Sharpe,* 449 Pa. 35, 296 A.2d 519 (1972).

We have earlier set out the relevant considerations for reviewing the totality of circumstances:

> "An evaluation seeking to determine whether a confession is voluntary because of psychological coercion must consider those elements impinging upon a defendant's will such as: the duration and the methods of interrogation, the conditions of detention, the manifest attitude of the police toward the defendant, the defendant's physical and psychological state and all other conditions present which may serve to drain ones powers of resistance to suggestion and undermine his self-determination. [Citations omitted]." *Commonwealth v. Alston,* 456 Pa. 128, 133–34, 317 A.2d 241, 244 (1974).

Appellant alleges several factors in the interrogation process which allegedly demonstrate the involuntariness of the confession.

First, he argues that he was tricked into accompanying the detectives to Media by reason of the warrant they brought to his attention. Appellant testified at the suppression hearing that he only agreed to accompany the officers to Media because they told him that "we have a warrant for you," *i. e.,* a body warrant. Detective Dickerson explicitly stated that he told appellant that he had a search warrant for appellant's home. The suppression judge concluded that no arrest took place until after appellant's initial admission of guilt. The credibility issue as to exactly what was said regarding the warrant was decided adversely to the appellant. Therefore, the factual allegations in the brief as to this deception are not legally cognizable in the totality formula.

■ Secondly, although appellant does not controvert the statements of the detectives that he was repeatedly told that he was free to go at any time, he does assert that it was made impossible for him to leave because he did not know his way out of the Court House. He did testify, however, that he never asked to be shown out and that he never indicated to the detectives a desire to end the questioning. The suppression judge obviously rejected his testimony in this regard as incredible.[1]

■ Finally, the mental age and condition of appellant are serious considerations, but a low I.Q. and limited education are not in themselves sufficient to render the confession involuntary. *Commonwealth v. Tucker, supra* (I.Q. 75–79; completed fifth grade; "mild mental defective"—confession held voluntary); *Commonwealth v. Darden*, 441 Pa. 41, 271 A.2d 257 (1970) *cert. denied*, 401 U.S. 1004, 91 S.Ct. 1243, 28 L.Ed.2d 540 (1971) (I.Q. 71–76; "mildly retarded level"—confession held voluntary); *Commonwealth v. Willman*, 434 Pa. 489, 255 A.2d 534 (1969) (I.Q. 60; "mental defective"—confession

1. Appellant also contends that since he exercised his right to end the initial interview with the police on December 30, 1970, it was improper conduct for the detectives to approach the appellant some 17 days later to reinitiate questioning. The argument is that once a suspect invokes his right to remain silent, the police are thereafter forever precluded from questioning a suspect even though there is a later waiver of the right. *Commonwealth v. Youngblood*, 453 Pa. 225, 234, 307 A.2d 922, 927 (1973), articulated the rule which is squarely opposed to this proposition:

"In three recent cases we have held that a defendant's initial exercise of *Miranda* rights did not foreclose a later waiver. In each instance, however, the waiver was preceded by a complete explanation of those rights . . . . *Commonwealth v. Grandison*, 449 Pa. 231, 296 A.2d 730 (1972); *Commonwealth v. Jefferson*, 445 Pa. 1, 281 A.2d 852 (1971); *Commonwealth v. Franklin*, 438 Pa. 411, 265 A.2d 361 (1970). See also *Commonwealth v. Mercier*, 451 Pa. 211, 302 A.2d 337 (1973)."

In this case, the warnings were delivered and explained several times before the confession was rendered. A hiatus of 17 days between questioning cannot be considered police harassment. Certainly an invocation of rights more than two weeks earlier cannot permanently insulate a suspect from later invitations to discuss the matter.

held voluntary); *Commonwealth ex rel. Joyner v. Brierley*, 429 Pa. 156, 239 A.2d 434 (1968) (I.Q. about 80; "mentally retarded"—confession held voluntary). Appellant argues that his mental age and condition prevented him from knowingly and intelligently waiving his constitutional rights. This factual issue was also determined adversely to defendant at the suppression hearing, and by the jury at trial.[2]

In the Commonwealth's favor the suppression record reveals that the appellant was well treated in every respect by the police. He was not under arrest until he made his first incriminating statement. There were no more than two hours of actual interrogation in a nine hour period. There were no long and protracted periods of constant pressure. There were long and ample periods of rest and appellant was fed twice. There is nothing in the testimony of the appellant that he was tired, confused, or harassed, or that he did not receive or comprehend the frequent constitutional warnings. Appel-

2. The sole witness for the defense at trial, Dr. Harvey Bartle, a psychiatrist, testified that he found the appellant to be intellectually deficient, functionally equivalent to an eleven to thirteen year old child. He also diagnosed appellant as a psychopathic or sociopathic personality meaning that "he just functions for the moment only." Such a personality, Dr. Bartle testified, is very susceptable to duress and pressure. Dr. Bartle concluded that the appellant could not have made a knowing and intelligent waiver of his constitutional rights.

In rebuttal, the Commonwealth presented Dr. Kenneth Kool, also a psychiatrist, who testified that he found appellant to be intellectually deficient in certain areas, but not deficient in his ability to express value or moral judgments. Dr. Kool rebutted Dr. Bartle's testimony by stating that a psychopath not only knows specifically what he is doing and its nature and consequences but that he can also be very cunning and adept at a specific ploy or act. Judging from the appellant's specific responses in the confession itself, Dr. Kool concluded that appellant was intellectually competent to understand all of his rights and to give a voluntary confession.

By its verdict, the jury corroborated the findings of the suppression hearing judge, and, although the verdict is not legally determinative of the suppression issue, it adds credence to the suppression judge's finding of fact in this regard which is also supported in the suppression record.

lant's repeated responses to the detectives indicated that he understood the *Miranda* warnings and that he voluntarily chose to waive them.

The main case relied upon by appellant is *Commonwealth v. Purvis*, 458 Pa. 359, 326 A.2d 369 (1974), which appears inapposite. Purvis, a 21 year old who was undergoing methadone treatment and who had an I. Q. of 72, was under arrest and interrogated at least eight times for periods of an hour or more during a preconfession custody which lasted 23 and a half hours. Purvis spent much time handcuffed to a chair and was afforded little opportunity to rest. We there cited the unfair frequency, length, and persistence of questioning as well as the physical and mental condition of the defendant as factors which resulted in unconstitutional coercion. No such sum of factors exists here. Similarly, *Commonwealth v. Simms*, 455 Pa. 599, 317 A.2d 265 (1974), *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973), *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973), and *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968) are clearly distinguishable from the case at bar.

On the totality of circumstances, appellant's confession was voluntary. The Commonwealth sustained its burden of establishing by a preponderance of the evidence that the appellant understood his rights and knowingly, intelligently, and voluntarily waived them. *Commonwealth v. Fogan*, 449 Pa. at 558, 296 A.2d at 758; *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. at 144–48, 239 A.2d at 428–29.

Judgment of sentence affirmed.

MANDERINO, J., filed a dissenting opinion in which ROBERTS and NIX, JJ., joined.

MANDERINO, Justice (dissenting).

I dissent. Although appellant's chronological age was eighteen years at the time of his arrest and confession,

the record is uncontradicted that his ability to comprehend was not equal to that of most eighteen-year-olds. His I.Q. was in the range of 70–75 (a "borderline mental defective") and he had gone only as far as the eighth grade in school. It is my opinion that a review of the circumstances surrounding the giving of the statement here shows that the confession was obtained in violation of appellant's rights and should have been suppressed. See also the opinion of this writer in *Commonwealth v. Jones*, 459 Pa. 286, 328 A.2d 828 (1974).

The majority asserts that this Court will not consider the impact of the alleged police deception as part of the "totality formula" because the time of appellant's arrest was a "credibility issue" for the suppression court alone to decide. Yet, the testimony of the police officers themselves shows that appellant (an eighteen-year-old "mental defective" with an I.Q. of 70–75) was presented with what the police knew was a patently defective "warrant", and then "requested" to accompany them from his father's garage in Philadelphia to the courthouse in Media, Pennsylvania, in a different county and a distance of more than 15 miles away. It seems clear to me that no credibility issue need be resolved to conclude that appellant was subject to police control and, therefore, under "arrest" at the moment he left his father's garage in their company.

The majority states that "[t]he suppression judge obviously rejected [appellant's] testimony [that it was impossible for him to leave the Media courthouse] as incredible." More incredible, it seems to me, is the majority's assertion that appellant (an eighteen-year-old "mental defective" with an I.Q. of 70–75) voluntarily, knowingly, and intelligently waived his rights and chose, of his own volition, to remain.

In its analysis of the "totality of the circumstances" the majority apparently forgets that it is the prosecution which has the burden of showing that the waiver was

voluntary, knowing, and intelligent. The defense need not show that it was involuntary, unknowing, or unintelligent. Yet, the majority's analysis focuses on what the defense did *not* show: (1) deception was *not proven* because the suppression judge made a credibility determination adverse to the defendant; (2) appellant did *not prove* that he was coerced into staying with police officers at the Media courthouse because that allegation was "incredible"; (3) appellant's age and mental condition did *not prevent* a valid waiver because the suppression judge adversely determined that credibility issue; (4) there is *"nothing"* in the testimony of appellant that he was tired, confused, or harassed or that he did not comprehend the frequent constitutional warnings." But what is there on the other side? That appellant gave standard "yes", "no", responses to the officers' pro forma recitation of the *Miranda* warnings, that in the nine hours that appellant spent in police custody, only two were devoted to actual interrogation, and that he was "well treated in every respect by the police." That evidence, it seems to me, falls far short of establishing a voluntary, knowing, and intelligent waiver of one's constitutional rights. I therefore dissent.

ROBERTS and NIX, JJ., join in this dissenting opinion.