453 A.2d 1010

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey MADDOX, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1982.

Filed Dec. 10, 1982.

Petition for Allowance of Appeal Denied March 16, 1983.

Andrew Achman, Pittsburgh, for appellant.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before BROSKY, CIRILLO and POPOVICH, JJ.

CIRILLO, Judge:

Appellant was arrested on February 5, 1980 and arraigned on the charges of murder, two counts of burglary and one count of criminal conspiracy. On August 26, 1980, appellant's motion to suppress his confession was denied after a hearing before the Honorable George H. Ross. A trial by jury commenced before Judge Ross in September 1980. On September 4, 1980, the jury found appellant guilty of second degree murder, criminal conspiracy and two counts of burglary. On December 4, 1980, appellant was sentenced to a term of life imprisonment on the conviction of second degree murder and five (5) to ten (10) years on one burglary count to be served consecutively to the term of life imprisonment. Sentences on all other counts were suspended. This appeal followed.

On appeal, Mr. Maddox argues that the trial court erred: (1) when it denied his motion to suppress an unlawfully

obtained statement made by him prior to arraignment; (2) because he was denied effective assistance of trial counsel, and (3) when it imposed an illegal sentence. We find no merit to appellant's arguments and affirm the judgment of sentence.

On February 3, 1980, at 11:10 p.m., Mary Buchewicz heard a hammering noise coming from the basement of the Strand Building, in Sharpsburg, Allegheny County, where her husband, Joseph Buchewicz, was custodian. While Mr. Buchewicz went to investigate the cause of the noises, Mrs. Buchewicz called the police. After completing the call, Mrs. Buchewicz started to follow her husband and upon reaching the stairwell, she heard her husband shout, "stay upstairs, two guys got me." Mrs. Buchewicz returned to her apartment and called the police again.

Sharpsburg Police Officer Michael Rapino was first to arrive at the Strand Building. When he reached the basement, he saw Mr. Buchewicz lying in the hallway unconscious with wounds in his chest. Officer Rapino never saw anyone in the immediate area, and Mr. Buchewicz died without ever regaining consciousness. Upon subsequent investigation, it was discovered that two offices in the basement of the building, one belonging to Adams Enterprises, and the other to National Home Products, had been broken into.

At 11:59 a.m. on February 5, 1980, Detective John Markel went to the Main De-Lite Restaurant to question appellant about the death of Joseph Buchewicz. Appellant agreed to accompany the detective to the Sharpsburg Police Station for questioning. Upon arrival at the station, one of the officers read appellant his Miranda rights which he agreed to waive. Appellant began to make a detailed exculpatory statement, but because of excessive noise and commotion in the Sharpsburg Police Station, Detective Markel asked appellant to accompany him to the Allegheny County Homicide Division in the Jones Law Building. They arrived at County Homicide at 12:58 p.m. At the Jones Law Building, appellant was confronted with some inconsistencies in his statement, and he began to inculpate himself. Appellant confess-

ed to his participation in the burglary but claimed it was his companion who stabbed the victim. Appellant agreed to sign a written statement and started the narrative at 2:03 p.m. It was completed at 4:20 p.m., and at 4:22 p.m., appellant was formally placed under arrest. At 5:02 p.m., appellant was arraigned at the Coroner's Office on the charge of criminal homicide. The arraignment on the burglary and conspiracy charges took place at a squire's office in Sharpsburg at 7:08 p.m.

■ Appellant's first argument is that the trial court erred when it denied his motion to suppress the statement made at 2:03 p.m. He contends that the statement was improperly admitted into evidence in violation of the rule established in *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977).

In *Davenport,* the Supreme Court of this Commonwealth held that if the accused is not arraigned within six hours of his arrest, any statement obtained after arrest but prior to arraignment shall not be admissible at trial. Therefore, the crucial issue in the application of the rule must turn on the time when appellant was placed under arrest.

Appellant contends that he was arrested sometime between 11:59 a.m., and the departure from the Sharpsburg Police Station to downtown Pittsburgh, rather than at 4:22 p.m., when he was expressly told he was under arrest. If the time of arrest was before 1:08 p.m., the arraignment on the burglary charges would have occurred beyond the six hour limit of *Davenport.*

The lower court agreed that the arrest occurred prior to 4:22 p.m., but found that the arrest took place at the time appellant started to incriminate himself, at 2:03 p.m.

In *Commonwealth v. Benson,* 280 Pa.Super. 20, 27, 421 A.2d 383, 386, 387 (1980), our court outlined the test to determine when an arrest has occurred. We wrote:

The test for the occurrence of an arrest has often been defined as the happening of any act that indicates an intention to take the individual into custody and subjects him to the actual control and will of the person making

the arrest. *Commonwealth v. Farley,* 468 Pa. 487, 364 A.2d 299 (1976); *Commonwealth v. Allessie,* 267 Pa.Super. 334, 406 A.2d 1068 (1979). An arrest may thus be effectuated without the actual use of force and without a formal statement of arrest. *Commonwealth v. Daniels,* 455 Pa. 552, 317 A.2d 237 (1974). The question is viewed in light of the reasonable impression conveyed to the person subjected to the seizure rather than in terms of the subjective view of the police officer. *Commonwealth v. Holmes,* 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Richards,* 458 Pa. 455, 327 A.2d 63 (1974).

The detective who interviewed the appellant had asked him at 11:50 if he would be willing to speak with him regarding the incident. At the suppression hearing, Detective Markel testified in part:

Q. From 11:59 when you first met Mr. Maddox until you arrived at the Jones Law Building, at anytime was Mr. Maddox under arrest?

A. He was not.

Q. Did you advise him of such?

A. Yes, I did.

Q. Did you advise him that he was free to leave at any time?

A. Yes, I advised him of that and his Constitutional rights.

Detective Markel explained that he thought the Sharpsburg Police Department was too noisy and he therefore asked appellant if he would go to the Pittsburgh building. Appellant agreed. The detective's testimony clearly indicates that it was appellant's voluntary decision to accompany the detective. There is no indication that appellant was given reason to believe that the circumstances had changed since 11:50 when he was told he was not under arrest. In fact, the detective testified that he told appellant that he wanted to change locations because the Pittsburgh office had a "better atmosphere." In view of these circumstances, we cannot agree that appellant was placed under arrest before his arrival in Pittsburgh.

We agree with the lower court's finding that Mr. Maddox was placed under arrest prior to 4:22. Surely, when he began to incriminate himself both he and the police knew that he was no longer free to leave. Even placing the time of arrest at 2:03, however, arraignment at 7:08 was timely. *See, Commonwealth v. Haggerty,* 495 Pa. 612, 435 A.2d 174 (1981), in which a person was taken to police headquarters voluntarily at 11 a.m., interrogated, given a polygraph test and arraigned at 5:55 p.m. Our Supreme Court found he was not arrested until he began to admit involvement in the crime.

Appellant next alleges that his trial counsel was ineffective in not calling certain character witnesses and in not using expert witnesses to counter those called by the Commonwealth.

■ In assessing a claim that counsel has been ineffective, we are guided by the following principles:

[O]ur inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests.

*Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967).

The initial factor which must be considered in applying this reasonable basis standard is whether the claim which ... counsel is charged with not pursuing had some reasonable basis.

*Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

■ Appellant contends that his attorney should have secured the presence of Anna Greisbaum, a woman with whom appellant had lived, and Alfred V. Milliman, an attorney who supervised a drug abuse program in which appellant had participated in 1973. As the trial court notes, "neither party had any knowledge of the crime, but they were merely former associates from Maryland." We agree with the trial court that the only possible use of these witnesses would have been as a character witness. They

were apparently asked to be available as such at the time of sentencing. Counsel testified at a post-conviction hearing that he did not call the witnesses because they had nothing relevant to offer. His decision clearly had a reasonable basis. *See, Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975).

Appellant also argues that his trial counsel should have sought experts to counter the testimony as to blood samples that had been given by the Commonwealth's experts.

In *Commonwealth v. Rhodes,* 272 Pa.Super. 546, 554, 555, 416 A.2d 1031, 1035 (1979), we explained:

> The pertinent rule in this Commonwealth provides that trial counsel's failure to present a possible witness is not per se ineffective assistance of counsel. *Commonwealth v. Charleston,* 251 Pa.Super. 311, 380 A.2d 795 (1977). The failure of defense counsel to call a possible witness is not to be equated with a conclusion of ineffectiveness absent some positive demonstration that the testimony would have been helpful to that defense.

Appellant has not demonstrated in any way that calling an expert to testify as to blood samples would have helped his defense. His attorney testified at the post-conviction hearing that his past experience gave him reason to believe that the results of the tests performed by the crime lab were accurate. He did, however, cross-examine the witness.

Particularly, given the facts of this case, we cannot say that counsel's decision resulted in ineffective assistance. Appellant was convicted of felony murder. His conviction did not require that he had actually stabbed the decedent— only that he was a participant in the underlying felony. See 18 Pa.C.S.A. § 2502, (Act of 1974, March 26, P.L. 213, No. 46 § 4, as amended). Mr. Maddox's confession placed him at the scene as a participant in the burglary. Under these circumstances, we cannot find counsel to have been ineffective.

■ Appellant's final argument is that his consecutive sentence of life imprisonment for murder of the second degree, and of from five (5) to ten (10) years for burglary

should have merged because the underlying felony is an element of the charge of second degree murder. We agree with appellant that one of the burglaries is an element of the charge of second degree murder and merges with the greater offense for sentencing purposes. However, the lower court's imposition of a consecutive sentence on the other burglary count which did not form the basis of the murder conviction was also proper.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This Constitutional guarantee is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (a) protection against a second prosecution for the same offense after an acquittal; (b) protection against a second prosecution for the same offense after conviction; and (c) *protection against multiple punishments for the same offense.* *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *U.S. v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). (emphasis added). Our concern in this case is with the third guarantee.

■ The case of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), states the rule for determining whether two offenses are the "same" for Federal double jeopardy purposes:

> Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182.

This test focuses upon the statutory elements of the two offenses, not upon the evidence introduced at trial to estab-

lish their commission. *Iannelli v. United States,* 420 U.S. 770, 785, fn. 17, 95 S.Ct. 1284, 1293–1294, fn. 17, 43 L.Ed.2d 616 (1975). Furthermore, our own State Supreme Court in *Commonwealth v. Tarver,* 493 Pa. 320, 426 A.2d 569 (1981), applied the *Blockburger* "same offense" test when it held that under the 1939 Penal Code,[1] the underlying felony of robbery was a constituent offense of felony murder. While the felony murder statute which governs the present case is a different one than applied in *Tarver,* we believe that a similar holding is called for here.

The present Pennsylvania felony murder statute, 18 Pa.C. S.A. § 2502, provides:

(b) **Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

(d) **Definitions.**— . . . :

"perpetration of a felony." The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape or deviate sexual intercourse by force or threat of force, arson, *burglary,* or kidnapping. (emphasis added).

Act of December 6, 1972, P.L. 1482, No. 334, § 1, as amended 1974, March 26, P.L. 213, No. 46, § 4, imd. effective; 1978, April 28, P.L. 84, No. 39, § 1; (18 Pa.C.S.A. § 2502).

Burglary is defined in 18 Pa.C.S.A. § 3502, as:

A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

Act of December 6, 1972, P.L. 1482, No. 334, § 1; (18 Pa.C.S.A. § 3502).

In *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the Supreme Court discussed a Dis-

---

1. Act of June 24, 1939, P.L. 872, § 701, 18 P.S. § 4701.

trict of Columbia statute similar in effect to 18 Pa.C.S.A. § 2502. The statute proscribed the killing of another person in the course of committing certain felonies. Whalen had been convicted of rape and killing in the course of a rape. The court held that proof of rape was a necessary element of proof of felony murder, and that for sentencing purposes, the offenses merged.

Similarly, proof of felony murder in the instant case requires proof of the underlying offense of burglary.

A double jeopardy violation would have taken place if the trial court had failed to merge one of the burglaries into the second degree murder charge. However, in the case at bar, there were two burglary counts, one of which merged in the felony murder. Appellant received a separate sentence on the other burglary. This clearly was not a multiple punishment for the same offense but separate punishment for two distinct offenses and no double jeopardy violation was committed.

Appellant's contention that both burglaries must merge into the murder conviction would be meritorious if it were found that the two burglaries initially merged with one another. This is clearly not the case.

■ The doctrine of merger applies when one crime "necessarily involves" another. *Commonwealth ex rel. Moszczynski v. Ashe,* 343 Pa. 102, 21 A.2d 920 (1941); *Commonwealth v. Olsen,* 247 Pa.Super. 513, 372 A.2d 1207 (1977). It is well settled that for one crime to necessarily involve another the essential elements of one must be the essential elements of the other. *Commonwealth v. Williams,* 290 Pa.Super. 209, 434 A.2d 717 (1981); *Commonwealth v. Olsen,* supra; *Commonwealth v. Farmer,* 244 Pa.Super. 334, 368 A.2d 748 (1976). That is, if no additional facts are needed to prove the additional offense, it merges into the primary offense for sentencing purposes. Only one sentence may thereafter be imposed. *See, Commonwealth v. Nelson,* 452 Pa. 275, 305 A.2d 369 (1973); *Commonwealth v. Turner,* 265 Pa.Super. 486, 402 A.2d 542 (1979); *Commonwealth v. Cox,* 209 Pa.Super. 457, 228 A.2d 30 (1967).

Applying this standard, it is obvious that the two burglary offenses did not merge. In order to convict appellant of two burglaries it was necessary for the Commonwealth to prove that he entered two "separately secured or occupied portion[s]" of a building or occupied structure. In the instant case, the Commonwealth established that appellant had burglarized two separate offices of two businesses in the Strand Building.

We are aware that our position will undoubtedly require this court some time in the future to decide which of two unequal felonies should constitute the "underlying felony" of a felony murder when the trial court decides that it is impossible to determine during which felony the murder actually occurred. This question is not before the court at this time and should be left for future resolution.[2] In this case, we have before us two felonies of the same degree and choosing one as the "underlying felony" and the other as a separate offense does not create a problem.

Judgment of sentence affirmed.

2. We would suggest that the lesser of the felonies involved should merge with the murder conviction as the "underlying felony." *Compare, Commonwealth v. Boerner*, 281 Pa.Super. 505, 422 A.2d 583 (1980), (court held that when crimes merge for sentencing purposes, the one for which defendant may be sentenced is the most serious crime).