583 A.2d 805

COMMONWEALTH of Pennsylvania

v.

Curtis BROWN, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 2, 1990.

Filed Dec. 3, 1990.

318

Allen C. Welch and Andrea I. Konow, Harrisburg, for appellant.

Joseph H. Kleinfelter, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

OLSZEWSKI, Judge:

In this case, appellant appeals from the judgment of sentence rendered by the Dauphin County Court of Common Pleas, following his conviction for arson endangering property and persons. He challenges the actions of the suppression court and the imposition of an effective sentence of not less than ten years to not more than twenty years for his crimes. We find no error and must affirm.

The factual and procedural history of the case is complex and warrants attention. Appellant, Curtis Brown, was arrested and charged with the crimes of arson endangering property (twelve counts) and arson endangering persons

(twelve counts) on March 3, 1988. Appellant was incarcerated in lieu of bail. A preliminary hearing was held in April 1988, and a *prima facie* case was found with respect to all counts. Mr. Brown was returned to Dauphin County Prison after the hearing.

Appellant filed timely pre-trial motions, including a motion to suppress any statements made to police during custodial interrogation. The Commonwealth also filed a pre-trial motion in the form of a motion to compel discovery of a psychologist's report. A pre-trial hearing began on August 1, 1988. At the suppression hearing, the following facts were established.

On March 3, 1988, two plain clothes officers from the Pennsylvania State Police approached appellant and identified themselves to him in the City of Harrisburg. Appellant had become a suspect in a series of arson fires in the area. The officers indicated that they wished to speak to appellant about the fires, and then requested that he accompany them to the State Police Barracks. The officers advised appellant that he was not under arrest, and that he was free to refuse to accompany them (N.T. suppression, 18–20).

Appellant agreed to accompany the officers on the five-minute ride. During the ride to the barracks, there was no conversation concerning the case. On arrival, the officers escorted appellant to an interview room. No uniformed officers were present. Trooper Lotwick, one of the officers, produced a standard State Police form with *Miranda* warnings which he read to appellant. The form had a waiver portion on the bottom. After Trooper Lotwick had read the rights to appellant, he asked appellant if he understood those rights, or if he had any questions about what was happening to him. Appellant indicated that he understood, and that he had no questions (N.T. suppression, 20–24).

After appellant had signed the waiver form, the officers asked whether or not he was responsible for setting any of the fires that had been occurring in the city, and specifically, the fire that occurred at 622 Reily Street. Appellant initially denied any involvement. The police then explained

that they had information that a person named "Sarge" was setting the fires, and that they knew that appellant's nickname was "Sarge." Appellant acknowledged that his nickname was "Sarge," and then stated, "I can't lie to you guys. I set the fire."

More specifically, appellant acknowledged setting the fire at 622 Reily Street (N.T. suppression, 27–28). Appellant was asked whether he was responsible for setting other fires, and he responded that he had done so, but he could not specify particular addresses. Appellant agreed to accompany the officers in an attempt to identify the properties where he had set fires (N.T. suppression, 29–30).

The officers' notes revealed that the scenario just described lasted approximately forty minutes. The officers stopped appellant at 2:50 p.m., and administered *Miranda* warnings at 3:17 p.m. Appellant made an admission at 3:30 p.m. (N.T. suppression, 30). Before returning to Harrisburg, the officers asked appellant to reduce his statement regarding the Reily Street fire to writing. Appellant agreed to do so, and wrote the following: "Curtis Brown, I sit (sic) the fire across the street from the misson (sic) on the second floor." The statement was signed by appellant. Appellant did not ask for, and was not provided with, any assistance in structuring his statement (N.T. suppression, 32–33).

Officers next contacted Detective Woodring of the Harrisburg Police, with whom they had been working on the arson investigation. They arranged to accompany Woodring on a drive around the city to identify fire locations for which appellant might admit responsibility. Before leaving the barracks, appellant was informed that he was under arrest. Appellant agreed to accompany the officers in viewing fire locations.

Woodring and the officers took appellant to various locations, including some where appellant was not a suspect. In each of those cases, appellant denied involvement with the fires; however, appellant admitted responsibility at eleven other sites. At many of the eleven locations, appel-

lant provided information regarding the manner of entry and the manner in which the fire was started. The trip around the city lasted approximately two hours. (N.T. suppression, 35–37.)

Detective Woodring was called to the stand, and testified that he had recognized appellant as a farm show security guard, prior to the drive around the city. Woodring asked Trooper Lotwick whether appellant had been given his constitutional rights, and then turned to appellant and asked him if he understood those rights. Appellant responded affirmatively. (N.T. suppression, 75–76.)

The Commonwealth then called appellant to the stand "as on cross-examination." Defense counsel objected on fifth amendment grounds. District Attorney Kleinfelter argued that the witness was being called with respect to the issue before the court; *i.e.*, whether appellant was given and understood the *Miranda* warnings. (N.T. suppression, 84–85.) The court overruled the objection and permitted appellant to be called as a witness by the Commonwealth.

On the second day of the suppression hearing, appellant reiterated his objection to being called as a Commonwealth witness. The Commonwealth then acceded to the defense request and asked to withdraw the witness. Furthermore, the Commonwealth asked to have appellant's testimony disregarded by the court. The court ruled accordingly. (N.T. suppression, 275.)

The defense then called Dr. Stanley Schneider, a clinical psychologist, to the stand. Dr. Schneider had performed a battery of tests on appellant, and reported that appellant was mentally retarded, with a mental age of approximately ten and one-half. Appellant's physical age was 24 (N.T. suppression, 127). Dr. Schneider was permitted to express his opinion that appellant would have difficulty with completing the written confession without assistance (N.T. suppression, 134). He also stated that comprehension of *Miranda* warnings required at least a seventh-grade reading level, and that he had "serious reservations" about whether appellant understood the warnings that were administered

to him (N.T. suppression, 135–137). (It should be noted that Dr. Schneider is not a forensic psychologist.)

On cross-examination, Dr. Schneider admitted that he was unable to state unequivocally that appellant was given help in preparing his written statement. The defense expert also noted that he was not able to say that appellant did not comprehend the *Miranda* warnings, or that he did not intelligently waive them. Dr. Schneider admitted that he had never asked appellant questions about the *Miranda* warnings. (N.T. suppression, 188–189.)

On rebuttal, the Commonwealth called Dr. Vincent Berger, a forensic psychologist. Dr. Berger testified that it was not possible to determine appellant's ability to comprehend the *Miranda* warnings through the battery of tests administered by Dr. Schneider. Dr. Berger, who was present during the proceedings, commented that he had heard nothing which would lead him to the conclusion that appellant was either incompetent or unable to understand the *Miranda* warnings. (N.T. suppression, 273–274.)

The Commonwealth then argued that the entire issue of waiver was irrelevant, because appellant was not under arrest at the time he gave his oral and written statements to police. Alternatively, the Commonwealth argued that, even if the court were to find that appellant was in custody when he made his admissions, appellant was competent to understand and waive his *Miranda* rights.

In denying the motion to suppress, the court ruled that, at the time of the first admission, appellant was not in custody. The court was also satisfied that appellant understood and voluntarily waived the *Miranda* warnings given to him upon arrest. (N.T. suppression, 284–287.) Therefore, following the suppression hearing, the trial court denied appellant's motion to suppress.

Trial commenced on September 12, 1988. After two days of deliberations, a jury found appellant guilty of all counts. Post-trial motions were timely filed and denied. Appellant was sentenced on December 15, 1989, to an effective term

of not less than ten years and not more than twenty years. A motion for modification of sentence was filed and denied. Appellant then filed an appeal to the Superior Court of Pennsylvania.

On appeal, appellant argues that he was subjected to custodial interrogation by the Pennsylvania State Police and the Harrisburg Police Department. Appellant claims that although he was read his constitutional rights, no effort was made to determine his understanding of those rights for purposes of waiver. Furthermore, interrogating officers knew that appellant was learning disabled, but elicited confessions anyway. (Appellant's brief, at 13.)

Appellant next argues that in allowing the district attorney to call appellant "as on cross" during the suppression hearing, the suppression court violated appellant's constitutional right to be free from self-incrimination and to remain silent. Moreover, appellant asserts that the district attorney and the judge both misapplied the civil statute which allows one side in a civil case to call a hostile witness "as on cross." The suppression court compounded its error by utilizing the testimony it had obtained in this manner in reaching its decision.

Finally, appellant argues that the sentence imposed upon him was excessive and unreasonable under the Sentencing Code. According to appellant, all of the information submitted to the sentencing court "mitigated" against the imposition of a sentence which would have been outside the Sentencing Guidelines, had they been in effect (appellant's brief, at 14). Appellant states that the sentencing court disregarded the mitigating information and deviated from the normal range of sentencing without placing an adequate explanation on the record.

I.

Our review of the briefs and record in this case lead us to conclude that the suppression court correctly denied appellant's motion to suppress admissions made to police by appellant. Appellant claims that the trial court erred in

denying his motion to suppress all of his statements to the Pennsylvania State Police. Appellant argues that he was in police custody before he made any admissions to the police. We disagree.

The warnings articulated by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), become mandatory whenever one is subjected to custodial interrogation. The United States Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id. See also Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980).

In the case at bar, upon conclusion of the suppression hearing, the lower court found that appellant was not in custody at the time of his initial admission to police regarding the fire at 622 Reily Street (N.T. suppression, 284). Our decision in *Commonwealth v. Ellis,* 379 Pa.Super. 337, 549 A.2d 1323 (1988), lends support to the trial court's decision.

*Ellis* suggested specific factors that a suppression court should consider in deciding whether or not police detention constitutes custodial interrogation. Under *Ellis,* "Police detentions only become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest." *Id.* Factors which may be considered include the basis, duration, location, and method of detention, as well as the investigative methods used. *See also, Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985) (suggesting consideration of whether defendant goes to the police station voluntarily, and whether he is informed that he is free to leave).

Application of the above criteria to the present case suggests that appellant was not subjected to custodial interrogation before he made his initial admission regarding the Reily Street fire. The duration of questioning was short. Appellant admitted to setting the Reily Street fire within thirteen minutes. Furthermore, appellant voluntarily ac-

companied police to headquarters. Police utilized no restraints upon appellant during questioning, and conducted the interview in a non-threatening interview room. Finally, police told appellant that he could refuse to accompany them and that he was free to leave at any time. Police also offered to provide a ride back to Harrisburg.

A case directly on point with the case at bar is *Commonwealth v. Maddox*, 307 Pa.Super. 524, 453 A.2d 1010 (1982). In *Maddox*, officers went to defendant's place of employment to question him. Defendant agreed to accompany the detectives to the police station for questioning. Police told defendant that he was not under arrest, and that he was free to leave at any time. During the questioning that followed, defendant made incriminating statements. The court concluded that an arrest took place only when defendant began to incriminate himself and should have known that he was no longer able to leave.

Under *Maddox*, it seems clear that appellant was not under arrest when he was initially taken to state police headquarters and when he shortly thereafter gave his initial incriminating statement. Additionally, under applicable case law, questioning of appellant was not custodial in nature. Therefore, police were not required to give warnings nor to receive a waiver of appellant's rights before eliciting his statement.

## II.

Alternatively, our review of the record also reveals that the suppression court properly concluded that appellant's incriminating statements were the product of a voluntary, knowing, and intelligent waiver of his *Miranda* rights. The suppression court did not make it clear whether it had based its decision not to suppress appellant's initial admission on the theory of non-custodial interrogation or on the theory of valid waiver of *Miranda* rights. The Commonwealth argued both theories in the alternative to justify denial of appellant's motion to suppress his initial admission

regarding the Reily Street arson. Because of the importance of the waiver issue, it will be addressed here.

 This Court has held that the determination of whether a defendant has validly waived his *Miranda* rights depends upon a two-prong analysis: (1) was the waiver voluntary, in the sense that defendant's choice was not the end result of governmental pressure; and (2) was the waiver knowing and intelligent? *Commonwealth v. Cephas*, 361 Pa.Super. 160, 522 A.2d 63 (1987). Furthermore, a suppression court should answer each of these inquiries based upon its assessment of the totality of the circumstances surrounding a defendant and the interrogation. *Commonwealth v. Scarborough*, 491 Pa. 300, 312–313, 421 A.2d 147, 153 (1980). The two-prong inquiry described in *Cephas* is valid whenever a defendant claims he was incapable of making a valid waiver because of a mental or psychological defect. Thus, the two-prong inquiry applies in the instant case.

 We must first examine whether appellant's confession was voluntary. In the instant case, two plain clothes officers approached appellant as he was walking on a city street. Nothing in their demeanor was menacing. The officers advised appellant of the nature of their inquiry, and asked if he would voluntarily accompany them to headquarters. Appellant agreed to go with them. The ride to headquarters took approximately five minutes, and the interview, itself, was conducted in a non-coercive atmosphere. Appellant's initial denial of setting any fires, particularly the fire at 622 Reily Street, suggests that the relationship between appellant and the officers was non-coercive to that point. Indeed, appellant did not confess until he was confronted with the fact that a person with the nickname, "Sarge," was responsible for the Reily Street fire.

Finally, from the time the officers encountered appellant on the street until he made his admission regarding the Reily Street fire, only forty minutes had elapsed. Only thirteen minutes passed from the giving of the warnings

until the first admission. There is nothing in the record to indicate the relentless grilling generally associated with coercive questioning.

### III.

This Court must next decide whether appellant fully comprehended the nature of the rights explained to him. The officers conceded that appellant appeared to be "slow." Dr. Schneider, who had administered a battery of tests to appellant, concluded that appellant had a full scale intelligence quotient of 58 and a mental age of ten years and four months (N.T. suppression, 120). It is important to note, however, that appellant graduated from the twelfth grade, although in a special education program.

The Pennsylvania Supreme Court has addressed the connection between mental age and voluntariness of confessions in *Commonwealth v. Crosby*, 464 Pa. 337, 346 A.2d 768 (1975). In *Crosby*, the defendant completed the eighth grade and had an IQ of approximately 70. The Supreme Court concluded: "[T]he mental age and condition of appellant are serious considerations, but a low IQ and limited education are not in themselves sufficient to render the confession involuntary." *Id.*, 464 Pa. at 344–345, 346 A.2d at 772. *See also, Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976).

In the instant case, although appellant is of low intelligence, his ability to comprehend and waive *Miranda* rights was enhanced by a number of factors. Appellant had previously been arrested and was given *Miranda* warnings four times. Repeated exposure to the warnings would serve to reinforce the concepts which are included in those warnings. (N.T. suppression, 181.) Appellant also has come into court on a previous occasion and has entered a guilty plea. Such exposure to the legal system and its jargon is significant in this case.

Furthermore, the record indicates that appellant has worked as a security guard for Sloan Detective Agency—a position which included training in the *giving* of *Miranda*

warnings (N.T. suppression, 211). Finally, even appellant's own expert witness, Dr. Schneider, could not state that appellant was incapable of understanding *Miranda* warnings. At best, Dr. Schneider could only admit his reservations on the issue (N.T. suppression, 137).

It is unquestioned that the officers involved in appellant's case read appellant his rights and asked if he understood them. Appellant indicated that he did understand, and that he did not have any questions. Officers read the waiver form to appellant, and he proceeded to sign. Officer Woodring inquired a second time about appellant's understanding. Appellant replied that he understood, once again.

Appellant now argues that, as a result of his mental deficiency, he submits to authority and is easily influenced. His claim is undermined by the fact that appellant denied setting the fires at sites where he was not a suspect. Such appropriate denials suggest independent resolve and a recognition of the seriousness of the situation. We conclude that the Commonwealth has met its burden of proof concerning the issue of waiver.

## IV.

■ Appellant next claims that the lower court erred when it permitted the Commonwealth to call appellant as a witness in the suppression hearing. Such a claim ignores the fact that appellant's testimony was later stricken from the record, upon motion of the Commonwealth. The testimony was neither used nor considered for any purpose. Because the evidence was stricken from the record, the issue is now moot in this particular case.

■ As far as we know, however, this is a case of first impression in Pennsylvania. Therefore, we will address the matter for the guidance of the bench and bar. We are satisfied that proper authority exists for calling a defendant as a witness at his own suppression hearing. Pennsylvania Rule of Criminal Procedure 323 provides that a defendant may testify at a suppression hearing, and that he does not waive his right to remain silent at trial as a result of the suppression testimony.

Furthermore, the Judicial Code, 42 Pa.C.S. § 5941(a) addresses the issue of testimonial privilege:

> Except defendants actually upon trial in criminal proceedings, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question, which in the opinion of the trial judge, would tend to incriminate him ...

*Id.*

Thus, pursuant to current law, a defendant may be called for a *limited* purpose, provided that the questioning will not violate his constitutional rights under the fifth amendment. Should concerns be raised regarding whether questions are potentially incriminating, the trial judge must rule on an ad hoc basis.

## V.

■ Appellant's final issue on appeal concerns whether the sentence imposed upon him was unreasonable and excessive. We find that the lower court's imposition of an effective sentence of not less than ten and not more than twenty years was neither excessive nor unreasonable.

Appellant was charged with and convicted of twelve counts of arson endangering persons, a felony of the first degree, and twelve counts of arson endangering property, a felony of the second degree. A person may be sentenced to a term not in excess of twenty years for a felony of the first degree. Similarly, a person may be sentenced to a term not in excess of ten years for a felony of the second degree. 18 Pa.C.S.A. § 1103(1) and (2).

■ Sentencing is a matter vested in the sound discretion of the trial court and the lower court's judgment of sentence will not be disturbed by an appellate court absent abuse of discretion. *Commonwealth v. Green,* 494 Pa. 406, 431 A.2d 918 (1981); *Commonwealth v. Meo,* 362 Pa.Super 328, 524 A.2d 902 (1987), *alloc. den.* 516 Pa. 632, 533 A.2d 91 (1988). To constitute an abuse of discretion, a sentence must either exceed the statutory limits or be patently

excessive. *Commonwealth v. White*, 341 Pa.Super. 261, 491 A.2d 252 (1985); *Commonwealth v. Palmer*, 315 Pa.Super. 601, 462 A.2d 755 (1983). When reviewing sentencing matters, we must accord great weight to the sentencing court as it is in the best position to view defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. *Commonwealth v. Fries*, 362 Pa.Super. 163, 167, 523 A.2d 1134, 1135 (1987), *alloc. den.*, 515 Pa. 619, 531 A.2d 427 (1987). *See also Commonwealth v. Hainsey*, 379 Pa.Super. 376, 550 A.2d 207 (1988).

 Furthermore, a sentence should not be disturbed when it can be demonstrated that the judge had a degree of awareness of the sentencing considerations and that the weighing process took place in a meaningful fashion. *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988). In the instant case, Judge Morrison considered a number of important factors when sentencing appellant. He had before him a pre-sentence investigation report and he received information from numerous sources at sentencing (N.T. sentencing, 18–20).

Judge Morrison balanced the needs of appellant with those of society before arriving at his decision. He viewed his obligation to both appellant and his community as a solemn one. In the end, Judge Morrison chose imprisonment over other forms of supervision. He commented:

So we have to take a serious look at those who have been affected by the kind of Curtis Brown and we have to do whatever we can do to protect those who may be exposed to the same kind of risk of harm, should he be left free to be supervised by the agencies that have offered to help. We could not charge them with the responsibility of granting us a guarantee these offenses would not happen again because they are not in a position to deliver that kind of guarantee ...

(N.T. sentencing, 19–20.)

In spite of the trial court's compliance, appellant still argues that the sentence is excessive. In *Commonwealth*

*v. Devers,* 519 Pa. 88, 546 A.2d 12, our Supreme Court addressed the issue of sentencing:

> A presentence report constitutes the record and speaks for itself ... We state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the presentence report, the sentencing court's discretion should not be disturbed. This is particularly true where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations.

*Id.,* 519 Pa. at 18, 546 A.2d at 18. Under *Devers,* appellant's argument must fail.

Appellant next argues that the sentence imposed by Judge Morrison was in excess of the Sentencing Guidelines. Although appellant proffers this argument, he later admits that the Sentencing Guidelines were not applicable to his case. *See Commonwealth v. Sessoms,* 516 Pa. 365, 532 A.2d 775 (1987). Subsequent to *Sessoms,* the Superior Court has stated that there is no bar against trial court consideration of the guidelines, but there is also no mandate to do so in cases where they are of no effect. *Commonwealth v. Pickering,* 368 Pa.Super. 100, 108, 533 A.2d 735, 739 n. 1 (1987); *Commonwealth v. Woodward,* 368 Pa.Super. 363, 369, 534 A.2d 478, 481 n. 4 (1987).

Appellant also argues that the sentencing court failed to adequately articulate its reasons for imposing a sentence that was outside the normal range of sentencing for similar offenses. He asserts that the sentence imposed deviated from the normal range of sentences imposed for similar offenses, and that the sentencing court must articulate its reasons for that deviation. No authority exists to support appellant's claim.

It is apparent from the sentencing transcript and the presentence investigation report that the trial court weighed a multitude of factors in its deliberations. In light of *Devers* and the record as a whole, it is clear that there was no abuse of discretion. A judge sentences on a case-

by-case basis, and appellant's sentence is a reflection of the crimes committed. The sentencing court was in the best position to balance the factors involved in the case, and its decision should not be disturbed. Appellant has failed to allege any abuse of discretion; therefore, we must deny his claim for relief.

Judgment of sentence affirmed.

HOFFMAN, J., concurs and files statement in which BECK, J., joins.

HOFFMAN, Judge, concurring.

I join in Sections I and V of the opinion of my esteemed colleague, Judge Peter Paul Olszewski. I agree with the lead opinion that appellant was not subjected to custodial interrogation when he gave his incriminating statements and that the court below properly denied appellant's motion to suppress. I also agree that the trial court's sentence was neither excessive nor unreasonable.

I do not find it necessary to address the alternative holdings on the suppression claim, and thus I cannot join in Sections II and III. I also offer no opinion on the propriety of the court's directing appellant to take the witness stand at the suppression hearing. Because the court struck this testimony, any question on the propriety of this procedure is now moot. Therefore, I cannot join in Section IV.

BECK, J., joins.