## Commonwealth ex rel. Cater, Appellant, *v.* Myers.

Argued June 7, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

68

*W. Bradley Ward,* with him *Joseph L. Ehrenreich,* for appellant.

*Charles Jay Bogdanoff,* Assistant District Attorney, with him *Louis F. McCabe, Richard A. Sprague* and *Arlen Specter,* Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, October 9, 1963:

This is an appeal from the Order of the Court of Common Pleas No. 2 of Philadelphia County denying Relator's petition for a writ of habeas corpus.

Cater (Relator) was convicted of murder in the first degree and sentenced to death.* The pertinent facts surrounding this homicide were stated in *Commonwealth v. Cater,* 396 Pa. 172 (p. 175):

---

* This is the third time this Court has reviewed various aspects of this case. In 396 Pa. 172 we vacated the judgment and sentence of death and remanded the case to the lower Court for re-sentencing. Thereafter the lower Court re-examined all the pertinent facts and circumstances and re-sentenced Cater to death. We affirmed in *Commonwealth v. Cater,* 402 Pa. 48.

"On the evening of March 26, 1957, three young men planned and perpetrated a robbery at the pharmacy of Jacob Viner, a North Philadelphia druggist. One of the robbers accompanied Viner to the rear of the establishment, and after warning the druggist to 'shut-up,' shot and killed him in the presence of his wife. The pharmacy's cash register was rifled of some $34 and the trio made good their escape.

"Subsequently, James Cater, Robert Lee Williams, and George Lee Rivers, . . . were arrested and indicted for the murder of Viner. All three, confessing to their participation in the crime, entered pleas of guilty to murder generally, whereupon the trial court adjudged each to be guilty of murder in the first degree."

All three were eventually sentenced to death.* Subsequently Cater applied to the Board of Pardons for commutation of the death penalty and on October 10, 1961, the application was argued before the Board. On December 21, 1962, Cater's counsel requested reargument. The Board on January 2, 1963, granted reargument.

On March 20, 1963, Cater's counsel presented oral argument before the Board of Pardons in support of Cater's application for commutation of the death sentence to life imprisonment. The Board of Pardons on March 27, 1963, denied the application. Thereafter Cater filed a petition for a writ of habeas corpus in the lower Court. The lower Court granted a rule to show cause why the writ should not be issued. On April 23, 1963, the lower Court after hearing argument by Cater's counsel denied the writ. Cater thereafter appealed to this Court.

Cater (through his very able counsel) contended before the lower Court and here contends that the Board of Pardons erred in denying his application for com-

---

* Williams has since been executed.

mutation of the death sentence without according him a hearing with respect to certain charges of attempted prison break. Judge GRIFFITHS, in an excellent opinion, correctly disposed of the petition. We agree with the following excerpt:

"The gravamen of the habeas corpus proceeding presently before us relates to what occurred before the Board of Pardons when a petition for commutation from death sentence to life imprisonment was argued on October 10, 1961. At that time *counsel for the relator** [Cater] mentioned to the Board of Pardons certain [newspaper] publicity concerning a prison break in which the relator [allegedly] was involved. After relator's counsel had mentioned this, the District Attorney also admitted it in his subsequent argument to the Board of Pardons. Relator's counsel was laboring under the assumption that the prison conduct record was before the Board of Pardons, whereas, in fact, it had not been submitted to the Board of Pardons.

"No decision was ever handed down by the Board at that time because of certain aspects of this case and its companion one which were then pending in the Federal Courts. Thereafter, when the Federal Courts decided not to intervene, reargument was granted [to Cater] and made before an entire new Board of Pardons. The case was argued before the Board of Pardons March 20, 1963, at which time *counsel for the relator* again brought up the subject of the alleged involvement of the relator in an attempted prison break. The District Attorney who argued contra the petition for commutation made no mention at all of the subject, and one of the members of the Board, in commenting, stated that he was not going to consider the matter as influencing him in any way whatsoever.

. . .

---

* Italics throughout, ours.

"A reading of the record, as a whole, before the Board of Pardons, indicates that mention of the prison breach was, indeed, de minimis, apart from the fact that it was initiated by the relator himself in presenting his case. There is no showing whatsoever that the Board of Pardons was influenced in any way by the alleged prison breach. In fact an entire new Board of Pardons reconsidered the request for commutation, and again relator injected the subject. We do not see the propriety of ordering indictment and trial for possible vindication of the relator. . . .

"In addition we do not believe that this Court can impinge upon the exclusive jurisdiction of the executive branch of the government in showing clemency. Action by the Board of Pardons is in accordance with constitutional provisions and in no way comes under the aegis of the courts. Indeed, were a court to review the conduct of a hearing before the Board of Pardons it would be a clear invasion by judicial direction of the immunity granted the executive branch of our government. Such is not consonant with our constitutional doctrine of separation of powers. Mississippi v. Johnson, 4 Wall. 475 (1866)."

Article IV, §9 of the Constitution provides that the Governor of Pennsylvania "shall have power . . . to grant . . . commutations of sentence and pardons . . . upon the recommendation in writing of the Lieutenant Governor, Secretary of the Commonwealth, Attorney General and Secretary of Internal Affairs, or any three of them, . . ."

The Board of Pardons is a board of clemency which is constitutionally ordained to *recommend* to the Governor of Pennsylvania the grant or denial of clemency, i.e., commutation of sentence or pardon of persons who have been convicted of and sentenced for crime. In the 89 years in which the Board has functioned, a full hearing of all petitions has been held after due public

notice and in open session, although the hearings have always been informal; the Board has not restricted the hearings to formal rules or principles of law, but on the contrary has received and considered all facts and circumstances which have any bearing on the subject of clemency, and all letters and pleas for clemency on behalf of the relator, as well as the recommendation (if any) of the trial Judge and of the District Attorney. Counsel for relator would have us change this long and established salutary practice and procedure, and in the myriad petitions which are presented for clemency substitute the rigid requirements of a Court trial boundarized by formal Court rules and principles and constitutional provisions relating to the basic rights of an accused to a fair trial. We find no merit in this contention, and no denial of due process or other infringement of any of relator's constitutional rights.

Order affirmed.

Mr. Justice Cohen dissents.