481 A.2d 342

**COMMONWEALTH of Pennsylvania**

v.

**James Michael BUTTON, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Roger F. BUTTON, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 1984.

Filed Aug. 3, 1984.

242

Robert E. Dalton, Public Defender, Wellsboro, for appellant.

James E. Carlson, District Attorney, Wellsboro, for Commonwealth, appellee.

Before SPAETH, President Judge, and BECK and TAMILIA, JJ.

TAMILIA, Judge:

This consolidated appeal arises out of one incident involving two defendants and a double homicide. Appellants, James Michael Button and Roger Button, entered pleas of guilty to two counts each of murder generally. The degree of guilt was set by the court at first degree in both instances and each appellant was sentenced to two consecutive life terms. Sentences on appellants' pleas of guilty to robbery and conspiracy charges were suspended pending the outcome of the appeals on the homicide convictions. Appellants now challenge all aspects of the ordered disposition and in so doing raise two issues of first impression in this Commonwealth.

On the evening of February 11, 1982 appellants perpetrated the bludgeoning deaths of Ross Cummings and Robert Southard, both disabled, and aged 74 and 59 respectively. The main purpose of the act was to obtain money, but the deaths of the victims were anticipated and in fact planned to prevent identification, as evidenced by Roger Button's prior statement of intent made to an acquaintance. Appellants had in the past performed day labor for the victims, knew their habits and lay in wait for them to arrive at the barn where they were to be killed.

Appellants' initial attack upon the sentences imposed is mounted against the extent to which the court may interpret sentencing law in fashioning an appropriate penalty.

Abuse of discretion in sentencing is defined in terms of either a manifestly excessive sentence or one which exceeds the prescribed statutory limit. *Commonwealth v.*

*Owens,* 315 Pa.Super. 400, 462 A.2d 255 (1983). Appellants contend that in both of these respects their consecutive life sentences constitute abuse of discretion. Specifically it is alleged that because 42 Pa.C.S.A. § 9711, which governs procedure in cases of first degree murder, does not expressly provide for the imposition of consecutive life terms, such sentences are illegal. However, 42 Pa.C.S.A. § 9757 does address the issue of consecutive sentences for multiple *offenses.* The question then becomes one of statutory interpretation and is governed by the Pennsylvania Statutory Construction Act, 1 Pa.C.S.A. § 1501 et seq.

■ Section 1932 of the Act speaks directly to the point at issue:

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things. (b) Statutes in pari materia shall be construed together, if possible, as one statute.

It does not require a quantum leap in logic to find that § 9711 and § 9757 of the Sentencing Act are in pari materia, and we do so find. See generally *Commonwealth v. Lobiondo,* 501 Pa. 599, 462 A.2d 662 (1983); *Commonwealth v. Johnson,* 368 Pa. 139, 81 A.2d 569 (1951).

This result finds an analogue in cases where a (mandatory) consecutive life sentence is imposed upon a person already serving a life term who is convicted of assault by a life prisoner, *Commonwealth v. Bryant,* 239 Pa.Super. 43, 361 A.2d 350 (1976), or where definite terms consecutive to a life sentence are imposed for offenses other than murder, *Commonwealth v. Burgess,* 500 Pa. 224, 455 A.2d 631 (1983) (possession of an instrument of crime); *Commonwealth v. Boyd,* 271 Pa.Super. 88, 412 A.2d 588 (1979) (prohibited offensive weapons, criminal conspiracy and robbery); *Commonwealth v. Maddox,* 307 Pa.Super. 524, 453 A.2d 1010 (1982) (burglary). If, as appellants assert, consecutive life sentences are not implicated much less mandated by the sentencing statute, then the discretion of the trial court is necessarily the controlling factor. See *Commonwealth v. Burtner,* 307 Pa.Super. 230, 453 A.2d 10 (1982).

We may derive some guidance too from the fact that in at least seven other jurisdictions [1] consecutive life sentences have been imposed without challenge, and that in two other jurisdictions such sentences have withstood constitutional attack. *Crawford v. State,* 236 Ga. 491, 224 S.E.2d 365 (1976); *Chavigny v. State,* 163 So.2d 47 (1964) Fla.App.

Further, despite the obvious limitations dictated by human mortality, there is no statutory provision restricting the length of possible sentences. As the ABA Standards Relating to Sentencing Alternatives and Procedures (Approved Draft 1968) observes:

It is very rare for there to be a legislative ceiling on the sentences which may be piled on top of each other. It is the rule rather than the exception that there is literally no limit to the term which can be imposed on the multiple offender. *Id.* at 174.

In short, the uniqueness of the statutory homicide provisions, which in appellants' view limits the flexibility of the court in pronouncing sentence, refers only to the type of penalty deemed appropriate by the legislature. Beyond this the court's discretion is subject to no limitation other than that inherent in the term "manifestly excessive" which is inapplicable here. In fact,

where the statute provides that the punishment for murder may be death, life imprisonment or imprisonment for a term not less than a specified number of years, a

---

1. Arkansas:
 *Graham v. State,* 254 Ark. 741, 495 S.W.2d 864 (1973).
 Missouri:
 *Wright v. State,* Mo.App., 614 S.W.2d 325 (1981).
 New Jersey:
 *State v. Carter,* 85 N.J. 300, 426 A.2d 501 (1981).
 New Mexico:
 *State v. Martinez,* 92 N.M. 256, 586 P.2d 1085 (1978).
 North Carolina:
 *State v. Nelson,* 298 N.C. 573, 260 S.E.2d 629 (1979); *State v. Williams,* 295 N.C. 655, 249 S.E.2d 709 (1978).
 Ohio:
 *State v. Gregory,* 8 Ohio App.3d 184, 456 N.E.2d 839 (1982).
 Washington:
 *State v. Smith,* 34 Wash.App. 405, 661 P.2d 1001 (1983).

sentence for a definite term may be fixed without reference to the expectancy of life of the accused, and may be for a period not only in excess of his life expectancy but even beyond the extent of the human span of life; and this is true not withstanding the sentence has the affect of depriving the accused of the benefits of laws relative to probation and parole and not withstanding the objection that it cannot be served within the accused's life time. 41 C.J.S. *Homicide* § 433.

The actuarial tables of life expectancy have no application in the determination of a mandatory life sentence, as the ultimate crime, according to the legislative scheme, demands punishment stripped of all rehabilitative beneficence. The sentence, then, cannot be said to go beyond the bounds of legislative intent or judicial prerogative. Nor is it, as appellants further argue, excessive vis-à-vis the offenses for which, and the offenders on whom, it was imposed.

▮ Appellants' further argument that the court took insufficient notice of their disadvantaged backgrounds, ages, etc., in fashioning the penalties is somewhat facticious considering the available alternative. It is precisely because the court imposed life sentences rather than ordering the death penalty that due consideration of mitigating factors is quite adequately demonstrated by the trial court. Having found first degree murder to have been committed [2] not once but twice, the trial judge was compelled to sentence on each conviction and to choose one of only two options. By indirect but pointed reference the trial judge indicated his familiarity with and adherence to the provisions of the statutes applicable in the case before him, and the evidence of individualization which led him to choose life over death as appropriate for appellants' sentence. *Commonwealth v. McCall*, 320 Pa.Super. 473, 467 A.2d 631 (1983). Had the homicides occurred under different circumstances, e.g. with some intervening temporal hiatus, or had appellants been tried separately, the objection to the cumu-

---

**2.** Appellants do not dispute the findings of the court as to degree of guilt.

lative nature of the sentences would not now be at issue. We cannot hold that an approximation of temporal simultaneity vitiates the fact that murders are separately punishable regardless of the context in which they occurred. Two violations of the homicide statute occurred and although there has in fact been no express allegation that homicides somehow merge, the implication of appellants' argument as to the excessive nature of the sentence leads inexorably to the conclusion that this is indeed the crux of their claim. Since, as has been shown above, sentences for offenses other than murder may without violation of either law or principle be pronounced consecutive to a life term, to deny to the court this disposition in murder cases would serve no purpose but to encourage the commission of successive homicidal acts.

Appellants claim too that the sentence is unenforcible because indefinite, vague, and therefore constitutionally unsound. This exception seems to be based on the language in which the sentencing order is couched, to wit, "the minimum sentence to be served for the total of all offenses with respect to this sentence to be for and during the term of the natural life of the defendant." [3] The Opinion of the trial court in its reference to some difficulty in the interpretation of the Order [4] is used to buttress appellants' position. However, a life sentence is precisely that, for life, and the difficulty in predicting duration has always been, and will no doubt continue to be, a question central to the human condition. Life sentences, whether imposed singly or in multiples, have no minimum, so that the impact of this part of the order is solely in reference to appellants' possible future release. Once sentence is pronounced, the length of the sentence effectively passes from the ambit of judicial consideration to that of the executive department, regardless of the wording of the sentence order. Parole, or more properly commutation, is neither a

3. Orders of July 20, 1982.

4. Slip Opinion at 11.

right of the prisoner nor a prerogative of the court, but is a matter within the administrative purview of the Board of Parole. *Commonwealth v. Gooslin,* 280 Pa.Super. 384, 421 A.2d 775 (1980). In this respect consecutive life sentences have the objective effect of providing the Board with the results of multiple convictions in computing a prisoner's eligibility for release, and operate subjectively to express the court's conclusion as to the severity of penalty merited. The sole inhibiting power they would have on the Board, would be to prevent it from construing the sentences to be concurrent. From this point on decisions made ex cathedra by the Board are unaffected by the court's intentions.

■ For the foregoing reasons we hold the imposition of these consecutive life sentences to be compatible with the intent of the legislature and within the sound discretion of the sentencing court.

■ Appellants next advance the proposition that the trial court's suspension of sentence in the robbery and conspiracy charges was improper and that any subsequent imposition of sentence on these charges is barred by double jeopardy. The instant case presents the situation anticipated in dicta by this Court in *Commonwealth v. Brown,* 290 Pa.Super. 448, 434 A.2d 838 (1981), in which the trial court suspends sentence on lesser charges pending appellate review of the sentence imposed for more serious offenses. The suspension acts, under these limited circumstances, in our view, as a procedural stay rather than a final disposition, which in any event was neither intended nor possible.[5] Such a stay represents an attempt to reconcile the various policy considerations involved, since the trial court must "take into consideration that its judgment (on the more serious count) might be reversed on appeal" which an appellate court may do to preclude the possibility that dual judgments might disadvantage the defendants. Further, if

5. 42 Pa.C.S.A. § 9721 lists as sentencing alternatives: (1) an order of probation, (2) a determination of guilt without further penalty, (3) partial confinement, (4) total confinement, (5) a fine. See also *Commonwealth v. Balles,* 163 Pa.Super. 467, 62 A.2d 91 (1948).

the underlying conviction rather than the sentence only is dismissed on appeal, then the trial court's reserved jurisdiction ensures that the defendant will not emerge unpenalized, and avoids imposing on the appellate court the unnecessary burden of remand. *People v. Spaniel,* 262 Cal. App.2d 878, 894 n. 3, 69 Cal.Rptr. 202, 212 n. 3 (1968). While the above cited case provides no absolute authority, being foreign and in fact based upon a statutory provision, its amplification of the issues involved is relevant here.

As appellants point out, however, the suspension also implicates constitutional issues in the form of both double jeopardy and due process, and, as the analogous case law demonstrates, the question of speedy trial rights as well.

The double jeopardy protection afforded by the fifth amendment is threefold. It protects against a second prosecution for the same offense after acquittal. *Green v. United States,* 355 U.S. 184 [78 S.Ct. 221, 2 L.Ed.2d 199] (1957). It protects against a second prosecution for the same offenses after conviction. *In Re Nielsen,* 131 U.S. 176 [9 S.Ct. 672, 33 L.Ed. 118] (1889). And it protects against multiple punishment for the same offense. *United States v. Benz,* 282 U.S. 304 [51 S.Ct. 113, 75 L.Ed. 354] (1931).

*Commonwealth v. Henderson,* 482 Pa. 359, 368, 393 A.2d 1146, 1151 (1978). Of these three concepts the first and third are clearly inapposite since appellants entered a guilty plea and there has been no persuasive argument advanced that robbery and homicide somehow comprise the same offense.[6] The question which remains is whether judicial delay in sentencing constitutes double prosecution. We

6. Appellants reliance on *Commonwealth v. Ayala,* 492 Pa. 418, 424 A.2d 1260 (1981) in support of the merger of the robbery into the homicide is misplaced. In that case, our Supreme Court citing *Commonwealth ex rel. Moszczynski v. Ashe,* 343 Pa. 102, 21 A.2d 920 (1941) found that aggravated assault would merge with criminal attempt to commit robbery because the latter necessarily involved the former as successive steps in one crime. Such is not the case here under scrutiny. See *Maddox, supra; Commonwealth v. McGavin,* 305 Pa.Super. 528, 531 n. 4, 451 A.2d 773, 775 n. 4 (1982).

conclude that it does not. In his concurrence to *Commonwealth v. Love,* 295 Pa.Super. 276, 441 A.2d 1230 (1982) Judge Hoffman points out that,

> One is placed in double jeopardy if he has received an acquittal or its equivalent, or a sentence which is no longer subject to attack. Until such legal sentence is imposed, the jeopardy in which he was placed, when first tried, must be deemed to continue until the time of imposition of legal sentence at the subsequent trial. 'Until a convicted prisoner receives the sentence which can withstand attack, it may be conceived that his original jeopardy continues without interruption and that he is, therefore, not put in jeopardy a second time when he receives his first valid sentence[.]'

*Id.,* 295 Pa.Superior Ct. at 286, 441 A.2d at 1235 (citations omitted). As there will be no subsequent trial of appellants, they will not be twice jeopardized.[7] But see *Commonwealth v. Fels,* 286 Pa.Super. 232, 428 A.2d 657 (1981).

 We next address the due process argument raised by appellant which bears within it the issues relating to speedy trial rights since the concerns with respect to procedural delay are the same. In *Commonwealth v. Giovengo,* 188 Pa.Super. 220, 146 A.2d 629 (1958) we held that a sentence may be suspended or deferred for a period of time equal to the maximum term for which the defendant might have been sentenced provided proper reasons are present to justify the delay. *Id.* Although admittedly this decision conforms to a statutory provision no longer in force, our Supreme Court has applied the same rationale in recognizing the harmlessness of pre-sentence delay in *Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980), holding that the constitutionality or otherwise of intervals between conviction and sentence depends upon circumstance. The court, assuming arguendo that speedy trial rights subsume the sentencing procedure stated:

7. We concede that the sentencing element of the bifurcated proceeding required in capital cases may in some contexts be viewed as a trial in and of itself. Here, the offenses at issue are robbery and conspiracy.

The principle factors to be considered in determining whether a delay in sentencing has deprived a defendant of his right to a speedy trial, are length of delay, reason for the delay, assertion of the right, and resulting prejudice to interests protected by the right to a speedy trial. *Id.*, 490 Pa. at 627, 417 A.2d at 599. The interests referred to, prevention of oppressive pre-trial incarceration, minimization of an accused's anxiety and concern, and limitation of the possibility that the defense will be impaired, *Commonwealth v. Glover*, 303 Pa.Super. 229, 449 A.2d 662 (1982), aff'd 500 Pa. 524, 458 A.2d 935 (1983), carry no particular weight in the context of the instant case. Since, like the appellant in *Pounds, supra*, appellants herein are subject to life imprisonment, neither pre-trial incarceration nor anxiety and concern are relevant. And since the basis for conviction is a guilty plea, the effect of delay on possible defenses is likewise immaterial. With respect to the other (cognate) aspects of due process, appellants without further elaboration as to the nature of the violation cite *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), as controlling and dispositive in that it requires that the delay be neither intentional nor oppressive. Appellants further contend that the appropriate remedy is dismissal of the charges. It is within this context that the circumstances of the delay and its possible ramifications must be examined. In *Glover, supra*, a 49-month delay, occasioned by no fault of the appellant's, was found not to be violative of the appellant's rights because during that period he was free on bail. Here, where a life sentence is the maximum against which the postponement is measured, delay during the pendency of the appeal is hardly oppressive. With respect to the requirement that the right to a speedy sentence be asserted, although objection to the suspension was made on appeal, appellants' Motions to Modify Sentence contain no such exception.[8]

8. Under ordinary circumstances issues not raised in the lower court are waived and may not be raised for the first time on appeal. Pa.R.App.P. 302. Questions concerning the legality of sentence imposed form a notable exception to the rule, however. *Commonwealth*

Suspension of sentence has its roots in the common law as a procedure in the nature of a reprieve allowing the prisoner to seek pardon.[9] We find that analogy to the instant appeal too compelling under the narrow circumstances of this case for dismissal of charges to be warranted. In fact suspension pending appeal does find some precedential authority in other jurisdictions.[10] In this Commonwealth there is "at this time no definitive rule limiting the length of time which may elapse between an adjudication or plea of guilty and the sentencing of the defendant."[11] Pa.R.Crim.P. 1405 permits delay until post trial motions, presentence psychiatric and diagnostic reports have been submitted to the court and examined by counsel, but no specific directive that sentence be imposed immediately thereafter now exists.

Although we do not applaud the trial court's novel method of assuring that appellants will not go unpunished, we similarly do not feel that the intentional nature of the delay warrants dismissal of the charges in view of its negligible adverse affect upon appellant life prisoners. We therefore remand to the trial court for immediate sentencing on the robbery and conspiracy charges.

We affirm the judgment of sentence to consecutive life sentences and remand the proceedings to the trial court for sentencing on the robbery and conspiracy charges as to each appellant.

Jurisdiction is relinquished.

SPAETH, President Judge, files a concurring opinion.

v. *Wilson,* 312 Pa.Super. 77, 458 A.2d 244 (1983). Even were this not the case, the unusual nature of the sentence at issue would dictate our examination of its propriety.

9. Sol Rubin, *Law of Criminal Correction* 1983.

10. *State v. Motley,* 546 S.W.2d 435 (1976) Mo.App.; *Donaldson v. State,* 93 Wis.2d 306, 286 N.W.2d 817 (1980).

11. Burton R. Laub, *Pennsylvania Manual of Civil and Criminal Penalties and Sentences,* 44–45 (1982 Revision).

SPAETH, President Judge, concurring:

I concur in the judgment of the majority affirming the judgments of sentence. I write separately because my reasoning differs somewhat from that of the majority in three areas: (1) the validity and effect of the minimum life sentence; (2) the adequacy of the court's statement of reasons for the sentences imposed; and (3) the validity of the trial court's action suspending sentencing on some charges pending disposition of these appeals.

–1–

I agree with the majority that the trial court had the authority to impose consecutive life sentences. Appellants also object to the court's imposition of a minimum sentence of life imprisonment. Section 9757 of the Sentencing Code, 42 Pa.C.S. § 9757, provides that whenever imposing consecutive sentences, the court shall indicate the minimum sentence to be served for the total of all the offenses. Appellants argue that Section 9757 does not apply to cases, such as these, involving two convictions for first degree murder. I should hold that appellants have no basis for objecting to the court's imposition of a minimum life sentence because the minimum sentence has no binding effect and serves as no more than a recommendation to the Board of Pardons and the Governor that appellants never be released from prison.

The purpose of imposing a minimum sentence is to determine when the prisoner becomes eligible for parole. The power to parole may not be exercised before expiration of the minimum term of imprisonment imposed by the court. 61 P.S. § 331.21. Prisoners such as appellants who are serving sentences of life imprisonment are not subject to parole in any event. *Id.* The minimum sentence, therefore, in no way alters appellants' eligibility for parole.

The only way appellants can be released from prison is if they receive a pardon or commutation of sentence from the Governor, *see* Pa. Const.Art. 4, § 9; 71 P.S. § 299, and the courts have no power or authority to impinge on the Governor's exercise of that power. *See Commonwealth ex rel.*

*Cater v. Myers,* 412 Pa. 67, 194 A.2d 185 (1963), *cert. denied,* 376 U.S. 933, 84 S.Ct. 704, 11 L.Ed.2d 653 (1964); *Commonwealth v. Gaito,* 277 Pa.Super. 404, 419 A.2d 1208 (1980). If the Governor, on recommendation of the Board of Pardons, should decide to commute appellants' sentences, then the court's imposition of a minimum life sentence will be of no effect. It is therefore apparent, and the trial court recognized as much in its opinion at pages 8–9, that the only effect of the court's imposition of a minimum sentence of life imprisonment is to recommend to the Board of Pardons and the Governor that appellants never be released from prison.

–2–

Appellants argue that the trial court failed to adequately state on the record the reasons for the sentences imposed. The majority rejects this argument, reasoning that the trial court's imposition of life sentences rather than death sentences demonstrates that the court adequately considered the mitigating factors. Majority Opinion at 5–6. If the trial court had imposed concurrent rather than consecutive life sentences, I should agree with this reasoning. The Sentencing Code mandates a minimum sentence of life imprisonment upon conviction of first degree murder. 42 Pa.C.S. § 9711. Therefore, if appellants had received concurrent sentences of life imprisonment, they would have received the minimum sentence possible under the statute and would have had no basis for complaint. *See Commonwealth v. Robinson,* 496 Pa. 421, 437 A.2d 945 (1981) (appellant's contention that trial counsel was ineffective for failing to adequately prepare for sentencing proceedings cannot succeed because appellant received a life sentence, the most relief that he could obtain even if his claim were meritorious).

Appellants, however, received *consecutive* life sentences. It therefore is not sufficient merely to note that they received life sentences rather than death sentences. Section 9721(b) of the Sentencing Code, 42 Pa.C.S. § 9721(b), provides in relevant part: "In every case in which the court

imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *See also* Pa.R.C.P. 1405(b) ("At the time of sentencing, the judge shall: ... (b) state on the record the reasons for the sentence imposed ....."). Since the trial court did have discretion in determining whether to sentence appellants to consecutive or to concurrent life sentences, the court was required to state on the record at the time of sentencing the reasons for imposing consecutive sentences.

Having said this, however, I nevertheless concur in the majority's rejection of appellants' argument, for I believe that appellants have waived it for purposes of appellate review.[1] At the sentencing hearing the judge expressly stated that he did not feel that he was required to state the reasons for the sentences imposed, beyond noting the mitigating circumstances, because life sentences were mandatory. N.T. 49. Appellants raised no objection to the court's failure to state its reasons. Moreover, appellants did not raise this objection in their motions to modify sentence. Having failed to raise their objection before the trial court, appellants may not raise it before us. *See Commonwealth v. Turecki*, 278 Pa.Super. 511, 420 A.2d 658 (1980) (appellant waived objection to court's failure to state reasons for sentence imposed when he did not raise it at time of sentencing or in motion to modify sentence).

–3–

The trial court suspended sentencing on the robbery and conspiracy convictions pending disposition of these appeals. Appellants argue that they are entitled to have these charges dismissed because of the resulting delay between the time of conviction and sentencing. I agree with the

1. I note that while the trial court did not at the time of sentencing state its reasons for imposing consecutive life sentences, it did do so in its opinion. While this statement does not fulfill the requirement that the statement be made on the record at the time of sentencing, it does at least reveal to appellants the court's reasons for imposing consecutive life sentences.

majority that in this case consideration of the factors set forth in *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980), leads to the conclusion that appellants are not entitled to have the charges dismissed. Nevertheless, I cannot agree with the majority's suggestion, as I understand it to be, that the practice of suspending sentencing on some charges pending disposition of an appeal involving other charges may have some valid purpose. Rather, I believe that the practice serves no valid purpose and I should make it clear that it is not to be followed or repeated in the future.

The majority suggests that the practice ensures that the defendant will not emerge unpenalized if his underlying conviction on a charge on which he was sentenced is reversed on appeal. Majority Opinion at 249.[2] The trial court here suspended sentencing because it thought that on the facts of this case the lesser offenses might merge with murder, but it wanted to be able to sentence appellants on the lesser offenses if the murder convictions were reversed on appeal. While suspending sentencing pending disposition of the appeal does indeed serve this purpose, I do not believe that it is necessary to achieve this purpose. Rather, this purpose can and should be achieved by properly sentencing a defendant at one time on all charges for which he was convicted.

Although the majority does not appear to limit its suggestion that the practice of suspending sentencing on some charges may serve a legitimate purpose to cases involving the possibility of merger of offenses, it seems to me that it is only in such cases that the practice could serve any arguably legitimate purpose. In cases involving the possible merger of offenses, the court, as in this case, would not

2. The majority also suggests that the practice avoids the unnecessary burden of remand. Majority Opinion at 249. It seems to me, however, that to the contrary, remand will be necessary more often so that, as in this case, the trial court may impose sentence on the remaining charges. Remand would not be necessary only in those cases where this court dismissed the remaining charges due to the undue delay between conviction and sentencing on the charges.

wish to sentence on lesser offenses if the sentences would be illegal and would have to be vacated on appeal. *See Commonwealth v. Brown,* 290 Pa.Super. 448, 434 A.2d 838 (1981) (court raises possibility that practice of suspending sentencing may have some validity in this situation). But neither would the court wish the defendant to go unsentenced if the conviction for the offense on which he was sentenced were overturned on appeal. The dilemma arises because of the doctrine of merger.

When the doctrine of merger is not implicated, I can see no arguably legitimate reason for the practice. If the defendant has been convicted of two separate offenses, the court must decide what sentence is appropriate for each conviction, considering the gravity and circumstances of the offense, the protection of the public, and the character and rehabilitative needs of the defendant. *See* 42 Pa.C.S. § 9721(b). None of these considerations is altered when one of the sentences is overturned on appeal. Any accommodations that the court may believe should be made between the sentences can be accomplished by making them either concurrent or consecutive. The court's discretion is not limited by the doctrine of merger.

Even when the doctrine of merger limits the sentencing court's discretion, I believe that the practice of suspending sentencing on the lesser offenses is not necessary and should not be resorted to. The proper procedure is to impose no sentence on the lesser offenses. Then, if the conviction on the greater charge is reversed on appeal, the appellate court can remand for resentencing on the lesser offenses. *Cf. Commonwealth v. Ford,* 315 Pa.Super. 281, 461 A.2d 1281 (1983) (sentences for attempted murder, criminal conspiracy and possession of an instrument of crime were vacated because appellant was improperly convicted of three inchoate offenses; on remand court may impose sentence for either aggravated assault or recklessly endangering another person, for which the court had previously imposed no sentence because of merger with attempted murder, if the court decides to sentence for criminal

258

conspiracy as opposed to attempted murder). If the conviction on the greater offenses is upheld, no remand is necessary.

In sum, suspending sentencing on some offenses pending disposition of the appeal involving other offenses is not necessary to fulfill any legitimate purpose and the practice should be discontinued.