646 A.2d 744

John M. MORGANELLI, District Attorney of Northampton County, Pennsylvania, on behalf of the Commonwealth of Pennsylvania, Petitioner,

v.

Robert P. CASEY, Governor of the Commonwealth of Pennsylvania, and Mark Singel, Lieutenant Governor of the Commonwealth of Pennsylvania, Respondents,

John M. MORGANELLI, District Attorney of Northampton County, Pennsylvania, on behalf of the Commonwealth of Pennsylvania, Petitioner,

v.

Robert P. CASEY, Governor of the Commonwealth of Pennsylvania, and Mark Singel, Lieutenant Governor of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 18, 1994.

Decided Aug. 11, 1994.

John M. Morganelli, Dist. Atty., for petitioner.

Amy L. Putnam, Deputy Gen. Counsel, for respondent.

George S. Leone, Asst. Dist. Atty., for amicus curiae The Pennsylvania Dist. Attys. Ass'n.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI and KELLEY, JJ.

CRAIG, President Judge.

These proceedings present important questions of constitutional and statutory interpretation with respect to carrying out sentences of death in criminal cases.

 The Governor of the Commonwealth, as respondent here, has presented a Motion to Open[1] this court's peremptory judgment in mandamus, entered April 21, 1994 pursuant to Pa.R.C.P No. 1098, directing the issuance of execution warrants in two criminal cases involving death sentences. Petitioner John M. Morganelli, District Attorney of Northampton County and prosecutor in the cases involved, is the party who sought the mandamus judgment.

---

1. The motion to open constitutes the proper mode for seeking relief from peremptory judgment in mandamus. *Hamby v. Stoe,* 448 Pa. 483, 295 A.2d 309 (1972).

## HISTORY

Our peremptory judgment relates to death sentences imposed upon a Martin Appel and a Josoph Henry, two cases in which the respondent Governor has failed to issue execution warrants for a number of years after the Pennsylvania Supreme Court had certified the complete records to him under the Death Penalty Procedures Act of June 19, 1913, P.L. 528, *as amended,* 61 P.S. §§ 2121.1–2123.[2]

The Supreme Court's certifications were in accordance with section 2 of that Act, 61 P.S. § 2122, which requires that Court, after completion of its automatic direct review under 42 Pa.C.S. § 9711(h), to certify "a full and complete transcript of the record" of every death sentence case to the Governor "within twenty days after the final disposal of the case upon ... appeal."

In the death sentence case of *Commonwealth v. Appel,* 517 Pa. 529, 539 A.2d 780 (1988), the Supreme Court certified the record to the Governor on March 4, 1988, now more than 6 years ago. In *Commonwealth v. Henry,* 524 Pa. 135, 569 A.2d 929 (1990) the Supreme Court certified the record to the Governor more than 4 years ago, on March 9, 1990.

Section 3 of the Act, 61 P.S. § 2123, is the applicable statute. It provides:

> After the receipt of the said record the Governor of the Commonwealth *shall* issue a warrant, directed to the Secretary of Corrections, commanding that such inmate be executed within the week to be named in said warrant, and in the manner prescribed by law. (Emphasis added)

---

**2.** With respect to the aggravating circumstances warranting the three death sentences imposed upon defendant Appel, the Supreme Court opinion stated that the defendant murdered three eyewitnesses in a bank robbery. He shot two tellers in the back, killing one immediately. He then shot the second teller, whom he had initially wounded, a second time to bring about her death also. Finally, he pursued a fleeing bank official to kill her.

Defendant Henry entered a dormitory room as a burglar, slashed a young female student with broken glass, bit her face, raped her and murdered her, by beating and strangling, to eliminate her as a witness to his crimes.

The Governor has not issued any warrant in either of the cases.

Undoubtedly, as indicated by section 2's mandate requiring the Supreme Court to certify the record "full and complete," in content, the law contemplates that the Governor must study the record carefully in order to name in the warrant an appropriate week for the execution of the death sentence. Assuredly, the time to be taken for that study is within his reasonable discretion.

However, in these cases, nothing upon the record indicates any rational basis for delay beyond the 5 years which had elapsed in the *Appel* case and the 3 years which had elapsed in the *Henry* case, as of the time of entry of our peremptory judgment.

This court's judgment was based upon our determination that, when the legislature mandates that the Supreme Court must certify each death case to the Governor within a scant 20 days after conclusion of the judicial phase, the Governor is not entitled to delay for substantial portions of a decade before he obeys the law's mandate that he "shall issue" the warrant.

## QUESTIONS PRESENTED

■ The brief for the Governor initially puts the issue as whether this "court can legislate a time within which the Governor must sign particular warrants" in reliance upon an Act which does not set forth any time limit.[3]

Of course, in our mandamus order, this court did not "legislate" by reading any specific time period into the Act. This court only concluded that, after a passage of years, the time had come and gone for the issuance of warrants in these two particular cases, and our orders therefore looked to

---

**3.** An additional objection on behalf of the Governor relates to the Governor's earlier motion to strike allegations of amicus curiae as to the total number of death row inmates at present, and the overall range of death warrants delayed. But this court *granted* the Governor's motion and struck those allegations, as matters wholly outside of the record before us. The objection is that this court recited those allegations. However, this court did so only in connection with identifying the matter being excluded.

current compliance with the law, reasonably allowing a month in the older *Appel* case and an additional month for the *Henry* case.

The Governor's brief thereafter presents its actual argument in terms of the two germane questions involved here:

1. Is the Governor's issuance of execution warrants entirely at his discretion, and hence not subject to mandamus order, particularly where the statute does not specify any time limit for his action?

2. Where the Governor has not expressly granted any reprieve, does his constitutional power of reprieve nevertheless permit him indefinitely to defer obeying the law stating that he "shall" issue the death warrants?

### 1. *Mandatory or Discretionary Nature of the Function*

The Death Penalty Procedures Act declares that it "is intended to furnish a comprehensive and complete method of inflicting the death penalty." Section 12 of the Act, 61 P.S. § 2129. *Commonwealth v. Frey*, 520 Pa. 338, 342, 554 A.2d 27, 29 (1989), *cert. denied*, 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990).

The Act uses the word "shall" in expressing the function assigned to the Governor with respect to the issuance of death warrants. The Supreme Court has stated that the word "shall" leaves no discretion to the Governor. *Sprague v. Casey*, 520 Pa. 38, 52–53, 550 A.2d 184, 191 (1988).

As this court stated in *West Penn Power Company v. Public Utility Commission*, 104 Pa.Commonwealth Ct. 21, 27, 521 A.2d 75, 78 (1987), "if the thing directed to be done is the essence of the thing required, the statute is mandatory."

Of course, implementation of the death penalty by the executive must follow the sentence if the sentence is to have any meaning. *Commonwealth v. Hill*, 185 Pa. 385, 396, 39 A. 1055, 1058 (1898), nearly a century ago, pointed out that "The time of execution [is] no part of the judgment but a mere executive or administerial act in pursuance of it."

The Governor's role is essential precisely because it is ministerial—an administrative necessity for accomplishing the decreed result—and therefore it is not discretionary, but mandatory.

In *Keystone Chapter, Associated Builders and Contractors, Inc. v. Thornburgh,* 92 Pa.Commonwealth Ct. 646, 500 A.2d 211 (1985), this court decided that the Governor's statutory assignment, to appoint an advisory board to implement the Prevailing Wage Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §§ 165–1–165–17, involved a mandatory duty because his inaction would leave the law inoperative. That result pertained even though the act did not specify any time limit for the Governor's action.

The absence of a stated time limit, within which the Governor must act, does not exempt the duty from being judicially mandated if not performed. For example, although the laws normally do not specify a time limit within which an adjudicative agency or a court must issue a decision after hearing a case, the failure to decide within a reasonable time is subject to correction by a mandamus order commanding that the case shall be decided. Although no statute sets any specific time limit within which a trial court must hear and dispose of cases before it, the Supreme Court, in *Commonwealth ex. rel. Duff v. Keenan,* 347 Pa. 574, 33 A.2d 244 (1943) directed a common pleas court judge to hear and decide 28 civil cases which had been pending for periods ranging from one year to four years, and to do so within 60 days.

Moreover, the absence of a timetable for the gubernatorial warrant function is understandable. Here the Governor's brief has offered, without objection, its own allegations about the correctional and medical concerns and procedures which must be considered in the serious matter of capital punishment. Just as a rigid time frame could not be feasibly prescribed for the completion of judicial appeals and reviews, the law avoids imposing a chronological specification upon the Governor.

Instead, the statute calls upon the Governor to act, by the issuance of a warrant naming the week of execution, for the purpose of establishing the tentative timetable which must be individualized, not prescribed in advance for all cases.

Inaction, or inordinate delay, in this situation constitutes a breach of the Governor's duty to "take care that the laws be faithfully executed...." Pa. Const. art. IV, § 2.

## 2. Role of the Governor's Constitutional Power of Reprieve

■ Finally, the Governor's brief contends that the executive's constitutional power "to grant reprieves," Pa. Const. art. IV, § 9(a), equips the Governor with authority to do nothing, over a period of years, after the Supreme Court has certified the capital case to him.

■ No authority is offered to support this idea of a "silent reprieve" power. As a matter of law, a "reprieve" is "the postponement of execution of ... a sentence...." It is "ordinarily an act of clemency...." Black's Law Dictionary, 1170 (5th Ed.1979)

Of course, an act of clemency necessarily contemplates an act, not inaction. To exercise the constitutional power of reprieve, which requires no Pardon Board action, the Governor obviously must *grant* the reprieve—normally for a defined purpose or period—rather than adopt the wholly ambiguous posture of doing nothing.

■ If any governor desires to relieve a defendant from the prospect of execution of sentence, that executive should do so, presumably for an expressed reason and for a defined time period. The executive cannot reserve an option ultimately to describe years of inaction, retroactively, as a reprieve.

Because a reprieve is a stay or postponement it must, like any stay, be articulated, not silent, and there must be a scheduled event which is being postponed. And the prospective execution set by the execution warrant is that event.

In short, the constitutional power of reprieve has no meaning or relevance until after the issuance of the death warrant, from the completion of which the reprieve provides a delay.

## CONCLUSION

There is no basis on this record or in the legal authorities for opening the mandamus judgment. With respect to these two cases, three years and more has afforded the Governor sufficient time to consider the records and issue warrants in accordance with his statutory duty.

SMITH, J., dissents.

### Nos. 367 M.D. 1993, 444 M.D. 1993

### ORDER

NOW, August 11, 1994, respondent's motion to open peremptory judgment is denied, and the stay heretofore granted is lifted, so that respondent shall issue a death warrant in the matter herein, within thirty (30) days from the date of this order.

KELLEY, Judge, dissenting.

I respectfully dissent for the reasons set out in my dissent to the prior majority opinion granting peremptory judgment in this matter. *See Morganelli v. Casey*, 538 Pa.Commonwealth Ct. 163, 641 A.2d 674 (1994). However, I wish to expand on the discussion of the Governor's power of reprieve as it relates to this case.

Constitutionally, the Executive Branch possesses complete power over commutations, pardons and reprieves. Pa. Const. art. IV, § 9.[1]

The Governor's delay in issuing a death warrant is an exercise of his reprieve power and the majority's attempt to judicially set a time limit for the issuance of warrants under

1. Article IV, section 9 of the Pennsylvania Constitution provides, in part, as follows:

(a) In all criminal cases except impeachment, the Governor shall have power to remit fines and forfeitures, to grant reprieves, commutation of sentences and pardons; but no pardon shall be granted, nor sentence commuted, except on the recommendation in writing of a majority of the Board of Pardons, after full hearing in open session, upon due public notice. The recommendation, with the reasons there-

the Death Penalty Procedures Act is an unconstitutional interference with that power. This is best said by our Supreme Court:

'In addition we do not believe that this Court can impinge upon the exclusive jurisdiction of the executive branch of the government in showing clemency. Action by the Board of Pardons is in accordance with constitutional provisions and in no way comes under the aegis of the courts. Indeed, were a court to review the conduct of a hearing before the Board of Pardons it would be a clear invasion by judicial direction of the immunity granted the executive branch of our government. Such is not consonant with our constitutional doctrine of separation of powers. Mississippi v. Johnson, 4 Wall. 475 (1866).'

*Commonwealth ex rel. Cater v. Myers*, 412 Pa. 67, 71, 194 A.2d 185, 187 (1963), *cert. denied*, 376 U.S. 933 (1963).

I would therefore grant the Governor's motion to open the peremptory judgment.

<hr>

for at length, shall be delivered to the Governor and a copy thereof shall be kept on file in the office of the Lieutenant Governor in a docket kept for that purpose.